Docket 17-4148. Please proceed when you're ready. Good morning, Your Honors. Andrew Finch for the United States. And with me at council table is James Fredericks, also of the Antitrust Division. May it please the Court, I'd like to reserve three minutes for rebuttal, please. Your Honors, we're here today to ask the Court to reverse two erroneous orders by the District Court, both of which were contrary to controlling precedent in this circuit. Those orders brought the Sherman Act prosecution of a per se unlawful customer allocation agreement in the air location services industry to a complete halt. Could I ask just a factual question? It really doesn't relate to either of the two issues you're raising, but could you explain how this guideline works? Just in 30 seconds, if Kemp has approached somebody first, and there's three errors, potential errors, and Kemp has approached one error but has not yet signed that error, and then Blake & Blake approaches, can Blake & Blake not sign the approached error, and neither could they sign the two other errors? That is, does it give you, did the agreement provide, the guidelines provide kind of off-base for all the potential errors or just the ones approached? No, you're correct, Your Honor. It's the first error and the subsequent errors in that estate that are not already signed. So if B&B showed up first, rang the doorbell and said, hi, I'm B&B, at that point, B&B, according to the guidelines, gets exclusive right to sign all the errors for that estate. If B&B was the first to approach. Okay. That's correct, Your Honor. Okay. So that first order of the two orders, the first order foreclosed the prosecution of the case under the per se rule, and it took the question of guilt or innocence away from the jury. The second order erroneously dismissed the indictment on statute of limitations grounds, and that was contrary to this court's decision in United States v. Evans. Both orders raise important questions for antitrust enforcement, and we're asking this court to reverse both of them. If I may, I'll start with the rule, what we call the rule of reason order in the briefs. This is the order that foreclosed the government from prosecuting a conspiracy under the per se rule. For more than 100 years, Your Honors, the Supreme Court has identified a class of antitrust conspiracies that are so clearly anti-competitive that they can be condemned as per se unlawful without any inquiry at all into their effects. And this class of offenses includes price fixing, bid rigging, and market division offenses like customer allocation or territorial allocation. The district court in this case erroneously ignored all of this history when it first foreclosed the government from prosecuting the case under the rule of reason. Let's assume you're correct. Let's assume that's correct. I mean, you make a pretty strong case, but how do we get jurisdiction to review the decision? I believe there's jurisdiction in two ways, Your Honor. Well, you said 3731, or you said mandamus. Yes. But let's do 3731. There was no final order on that. Was there any final disposition of the case? There's no final disposition on that issue, Your Honor, but we believe that there are cases in this circuit, United States v. Bergman, United States v. Schneider, for example, that say that when a district court does something like this, that's effectively a dismissal. Well, those cases say when the district court does something that gets rid of a claim, that it's a dismissal. But here, the court didn't dismiss the antitrust case. The claim is an antitrust violation. All the court did was enter kind of an evidentiary ruling, much like the court might have in any motion to limit. And he said, you know, I won't let this witness testify of yours. I won't let that witness testify, but still go ahead with the case. Here, the antitrust claim remained. The court simply said, I'm not going to give you an evidentiary leg up to rely on per se. I'm going to make you use a rule of reason. I would disagree with that, Your Honor, in this way. The per se rule is a distinct theory of liability. And there are cases that talk about dismissing a distinct theory of liability. It's a distinct way of proving a liability. But the liability is the same. It still is Section 1 of the Sherman Act. There's no different section of the Sherman Act. There's no subdivision that is relied upon. It is one violation of one statute, very precise. It is one violation of one statute. I will agree with that. But there are cases, Your Honor, the closest one I would go to is, for example, the Henry Cox Enterprises set-top box antitrust litigation, where this court was asked to consider a tying arrangement under the per se rule. And it decided that there was no claim made out under the per se rule and didn't consider the rule of reason because the plaintiff hadn't alleged that. And that's consistent with other cases in our briefs from other circuits. And it's also consistent. I don't understand. I mean, all that is saying is the court wouldn't consider a rule of reason because you didn't allege that as a method of your proof. That would be no different than saying, I'm not going to consider a new witness you didn't list because you weren't relying on that other witness. Or I'm not going to rely on this theory because you didn't do it. But it doesn't change the fact that it's not multiplying. It's not disposing. This Court's ruling, I just don't see how it disposes of a cause of action. What it does, Your Honor, and I'll talk briefly in a moment about mandamus. But I think what's important is that not only this Court but other courts. There's a case, for example, from the Ninth Circuit that refers to it. It's called In Re Manufactures Relocatable Insurance. It talks about the per se rule being a distinct substantive theory of law. And there are Supreme Court cases like professional engineers, for example, that we cite in our briefs that talk about it as a distinct category. It is a category, but nobody says it is a different claim. They're all saying it is. I mean, those cases talk about, yes, it's a different category, but it is to prove one violation. And if you get rid of one method of proof, you're not getting rid of the claim. So I agree with you. It's one claim under the Sherman Act. There are cases, and I would point to the Seventh Circuit's decision in Bloom. For example, the First Circuit's decision in United States v. Levasseur that talk about distinct theories of liability. And I think that's the point I'm getting to, is that there is support for saying it's clearly a distinct theory of liability under Section 1 of the Sherman Act. There was actually a motion to dismiss that was filed on this issue. Essentially, the defendants asked for dismissal once the Court found – if the Court, you know, bought their argument that the per se rule didn't apply, they asked for dismissal. But my understanding was the Court did not go forward with that. I think they argued on due process grounds. There was a due process argument that the Court did not address. So you could have perhaps gotten there had the Court addressed that argument and found against the government you would have had a dismissal. But we don't have that. What we really have, don't we, is just essentially the government saying, well, we are going to choose not to proceed, and we're going to say that right out in open court. We're not going to proceed unless we do so under the per se rule. That's a government choice. It's the government's discretion. But I'm like Judge Ebell. I'm not seeing where that is equivalent to a claim being – going away with a ruling, essentially. Well, I would point to United States v. Schneider, for example, where this Court talked about the government's case and the prosecutors having some degree of discretion in order to decide how to develop and present the case. And what the Court did here, I think, is not just saying, well, we'd like you to proceed under the rule of reason, but saying you may not proceed under the per se, the well-established per se rule. And so we view that as, in effect, taking away the question of guilt or innocence of a per se violation under Section 1 of the Sherman Act, taking that away from the jury in one sense, and at the same time constraining the prosecutor's discretion, the executive's discretion to decide how to put on its case, which leads me to the point about mandamus. Yeah. Let's talk about that, because we have two tests on mandamus. We have Cooper Tire that has three conditions. And then we have a quest that is added kind of five more. And you could make a pretty credible case. I think that a lot of those criteria are met. The one I'm most concerned about is if we get to the five extra guidelines of quest, the one number four says whether an order represents an oft-repeated error or manifests a persistent disregard of federal rules. So my question is, do you need to satisfy all five of the quest tests, or would four be enough? And is there evidence that this judge has repeated this error in the past, or would we look at whether other judges have repeated this error? And if so, is there any record evidence of whether other judges have repeated this error? I'm assuming it's an error now. It may not be, but I'm just making that assumption for argument purposes. Well, I would respond first, Your Honor, that I don't think we have to meet every single one of those criteria. I think that it's enough here that there's no alternate means for us to get redress in the district court. Where does it fit if we are convinced the district – if we were to be convinced that the court was wrong not to allow a per se approach, just in terms of our supervisory responsibility for mandamus to correct something? Where does it fit, Your Honor? Yeah, I mean, is that enough? What if we didn't think these tests were all met, but we did believe that the district court had a misapprehension of the law and it would be useful to correct it, but if these tests aren't met, do we still have the discretion under kind of an advisory discretion to grant mandamus? Or does mandamus really have to fit within the quest and the Cooper Tire tests? You know, Your Honor, I have heard reference to something thought of as advisory mandamus. I don't – that's not – clearly we believe we fall under the Cooper Tire here. I'm not proposing an advisory mandamus. It's either a real mandamus or it's not a real mandamus. But the question is whether one of the justifications for a real mandamus might be to correct a misapprehension of law. Yes, I believe so. I mean, I think that's the third – one of the third points that – I think the third, depending on how you count them, requirement under Cooper Tire. We have mandamus. It's very rare. And probably there is no case that I can – are there any cases where the court has granted a mandamus in a situation like this where the interlocutory appeal statute doesn't work? I believe there is a mandamus case in re-United States that's cited in our briefs that is a case where the Tenth Circuit issued mandamus. It had to do with the Second Amendment and a defense. And there was a question about whether or not there was a – a defense was available and mandamus was sought and granted. It had to do with jury instructions. This is – this is not that case. We think this is more significant in terms of the impact on the trial that you would see. It's not just a jury instructions question. But as far as the significance of the error, the two that I mentioned earlier, the Rule 12 issue taking the general question of guilt or innocence away from the jury and also the constraining of the prosecutor's discretion to shape the case, that we think falls within the concept of the usurpation of power that is reflected in some of the cases. I mean, it's really quite extraordinary what the district court did here, and we think that that does justify mandamus. If it's – Well, ruling on a pretrial motion on a theory, as you call it, of liability or a method of liability, as it seems to be, isn't some kind of outrageous action by this district court judge. They filed a motion, and it seems appropriate for the court to have made that ruling at that point. The problem is it's a pretrial ruling. Your Honor, we believe that – It's not an extraordinary action by this judge. Well, we think that what's extraordinary in this particular case is the extent to which the court entertained facts during – in connection with the motion that were disputed by the government, very clearly disputed by the government multiple times, both at the hearing and in the papers, entertained those on a Rule 12 motion. And the cases I've mentioned, in particular, I believe United States v. Pope, is very clear about the circumstances under which a Rule 12 motion should be considered. And I do think it's actually extraordinary. And we wouldn't have sought mandamus. We can't seek mandamus without seeking the approval of the Solicitor General. And we did that because we think in this context this is extraordinary, and that's why we're requesting that relief. Had you tried the case under a rule-of-reason approach, could you have gotten to the appeals court to challenge the per se ruling? I don't believe so, Your Honor. Well, if there were – there would be a risk that we could not, because if we – if we were to try it under the rule of reason and there were an acquittal, I think the double jeopardy would prohibit that. So I don't believe there would have necessarily been a path to challenge that if we had tried it under the rule of reason. I have about a minute remaining, and I'd be happy to address further the question of the application of the per se rule if that would be helpful to the Court. There is also the statute of limitations, which we haven't addressed at all. And I'll turn to that unless you have further questions. And the issue with the statute of limitations is there's a clear decision in this circuit, United States v. Evans, that talks about a conspiracy. It was a bid-rigging conspiracy. But what happened there was there was a question about the statute of limitations. And this Court clearly held that receiving the payment on a bid-rigged contract within the limitations period is sufficient to be an act in furtherance of a conspiracy that brings a conspiracy within the statute of limitations. We have exactly that here, and I don't think you'll hear the defendants dispute that, that there were not only receipt of payments on allocated contracts, but there was also one thing more, which is the division of those proceeds between the co-conspirators. That is, the money came in, and then they split up their ill-gotten gains. I don't believe we'll hear them dispute that. They didn't below or in their briefs. And that, under United States v. Evans, also a case called United States v. Morgan, recognized that dividing up the proceeds is something that brings an act in furtherance within the scope of the statute of limitations. With that, unless there are further questions, I'll sit down. Thank you. May it please the Court. My name is Richard Albert. I represent the defendant and appellee, Dan Mannix. With the Court's permission, I'll address the district court's rule of reason decision and why it's not appealable. And then, with the remainder of my time, my co-counsel, Jim Mitchell, who represents Kemp and Associates, will address the statute of limitations decision. Your Honors, it makes good sense that the rule of reason is the presumptive rule in Sherman Act cases, and the per se rule applies only to a few clearly defined categories of conduct. The per se rule precludes evidence of the justification for an impact of an agreement. And it's a blunt instrument. It's a legal shortcut that provides that certain specific types of agreement are so inherently evil, so obviously anticompetitive, that ordinarily the government doesn't have to prove intent. It doesn't have to prove any competitive effect. It just has to prove you entered into this agreement, and you're guilty of a crime. Here, the government would just offer the written guidelines agreement in evidence, and the jury would be instructed that the agreement is per se illegal, and gotcha, the case is proved, Mr. Mannix and Kemp are guilty, and we can move on directly to sentencing. That preclusion of evidence is what the government asks for below. At page 11 of their main brief, page 243 of the appendix, and also at oral argument. Here, the efficiency enhancing features of the guidelines agreement, and the unusual way of doing business in the quirky little industry of air location, not to mention that the agreement actually had a de minimis impact on price and increased the proportion of lower value estate service. Service. Counsel, you mentioned the efficiency aspects of the agreement. And it seemed to me that was made perhaps it was a byproduct of the agreement, but it certainly wasn't the reason for the agreement. The agreement was to make sure that they both participated and had a share of the commissions. The efficiency enhancing, it's a single estate, and it only has to be administered once. It's inefficient. I'm saying that wasn't the point of the agreement, was it? Well, look. In all of these cases, one could argue about that. And frankly, the fact that one could argue about that is what takes it out of the per se rule. If there's efficiency enhancing potential there, if at the time it was entered into, it could enhance efficiency, the cases teach that now you're talking about the rule of reason. The government can prove. The government can say, hey, no, it's more anti-competitive than helpful to efficiency. They'd have a hard time doing so here, I believe, but they certainly are free to prove that. That's a rule of reason argument. The question is, is this particular agreement so naked, is it so devoid of any possible efficiency enhancing that we can say, we don't need to hear anymore, this one is per se. This agreement, it's a written agreement that enables us to look at what it really is, and this agreement had efficiency enhancing features built into it. I don't think that a per se rule fails on those particular applications where you can show efficiency enhancement. I think that it's the bigger picture, the per se rules are applied when generally these things are anti-competitive, and I don't believe that you can come in on a particular case and say, well, our particular violation of per se happens to enhance efficiencies. Your Honor, if this were a standard customer allocation. But there isn't anything more unusual. You say this is so unique because it's error allocation and it's tracking down and it is a small industry and there's not much effect. Every single one of those distinctions has been negated by, I think, the Supreme Court in each case, certainly by circuit courts, saying that none of those are reasons to get out of a per se rule. Your Honor, respectfully, this case, if you put aside those, the agreement in this case is highly unusual. There are two main forms of customer allocation. There's geographic and there's existing customer. This is neither of those. This agreement only springs into effect in the very rare circumstance where both companies have put a major investment into researching a particular state and they run into each other. It's only in that very unusual circumstance, which is two and a half to three and a half percent of the cases. What distinction, why does it matter that it's new customers rather than existing customer base? What does that have to do with it? It's not an issue of new customers. It's that the agreement only applies when in this unusual circumstance where they both have invested in the same estate. How unusual was it? It must not have been too unusual. It was highly unusual. It's two and a half to three and a half percent of the cases that Kemp did. It's a very, very small. So it's really more about the fact that it's unusual rather than it's about that it's new customers. It's about the fact that it only, you could have written, if they had the minds to violate the law and they could have written the geographic, that would have been easy. They wrote an agreement that only triggered when it was efficient. Only when, and this industry is unusual in that you put all your investment in up front and the customer doesn't know you exist and you don't know they exist. It's not like the government cites bidding cases. This is unusual. Well, but if two supermarkets say we only, one, only one percent of our revenue is from the sale of milk, but we're going to agree with the other supermarket to fix the price for the sale of milk. Oh, but it's only, it's unusual. It's only one percent of our sales and it deals with new people that don't come in all the time. I mean, some of the people are new. You wouldn't give them the time of day on that. I completely agree with you, Your Honor. So, I mean, well, what makes this one different? You can continue that argument, but I will tell you that I think the case law is pretty difficult for you to overcome on those things. Your Honor, respectfully, what makes this one different is that both of the parties are then jointly working on the project. That is the administration phase, which only has to be done once per state. That is what makes the situation different. The situation that you just said, they're both selling milk. Who buys the milk? They're not jointly selling that milk afterwards. Well, you're coming now back to the efficiency argument. Now, it is inefficient because they both have to put in so much effort, whereas you don't have to put in any effort to sell milk. But I believe, I mean, until shown to the contrary, we'll certainly research it, but I don't think that efficiency is traditionally or typically a defense when you fall within the parameters of a per state violation. The question is, do you fall within the parameters? And if you look at the sulfuric acid case, and if you look at the Polk Brothers case, which are very good examples of this, Polk Brothers, two retailers come together and they say, we're going to have this joint facility, but you guys can't sell products we sell, and we can't sell products you sell. And the Court said, no, that's okay, because it was efficient, because they had this joint activity, which is the new facility. Here, it's the joint activity, which is the administration of these products. You don't argue that you were joint venture. You never argue that this was a joint venture. We did. Well, okay, you may have argued that, but you're not, that's not the facts we have to accept here. Your Honor, frankly, if the guidelines agreement had the word joint venture on the top instead of guidelines, these are lay people who did this agreement. We think it's effectively completely the equivalent. But, Your Honor, I'd like to move to the appealability issue, if I may. Sure. We feel quite strongly that it's not appealable for the reasons that Your Honors have  stated. With regard to mandamus, it is far, the most that can be said, I believe, is that someone could disagree with the approach the District Court took. There was nothing, nothing egregious about the process. The government moved for re-argument. This was a considered decision. The only thing the government is pointing to is considering additional facts at the Rule 12 stage. Two points on that. The first is the only additional fact that the judges did consider is the guidelines agreement. There is no real, real dispute that the guidelines agreement is the agreement. The government repeatedly below said, don't look at it, don't look at it. It's misleading, it's irrelevant. They didn't say, oh, and it's not the agreement. If you look at the cooperative theaters case, which we, sorry, the cooperative groceries case, in that case there were two separate agreements at issue. There's no separate agreement. The reason we're here is the written agreement. The Court was well within its discretion to look at that agreement. And frankly, the key factors about the marketplace were apparent from the face of the indictment. The agreement certainly helps, but I think that there's no, you can't get to mandamus based on that. Well, let's talk about mandamus, because it seems that the government can certainly strongly meet the first couple of factors. They don't have any other adequate means to secure any relief. There will be damage to prejudice in a way not correctable on appeal. They're essentially done. Well, there's no. And I mean, that's a pretty strong position on at least two and maybe three of the five factors. Your Honor, I'd like to speak to that. And is there any case law requiring that they have to strongly meet all five factors, or does the fact that they strongly meet those three factors, perhaps, is that sufficient? I don't think they have to necessarily always meet all five. But the factors that they are most relying on are factors that don't have a lot of weight. And this Court spoke directly to this in the McVeigh decision, which said that you can't put a lot of weight on the fact that in a criminal case, in the criminal case, a pretrial motion, the government is very narrowly circumscribed ability to appeal. And so if you put a lot of weight on that and sort of customarily grant mandamits, you're taking away from Congress its decision to narrowly circumscribe the Court of Appeals' ability to address pretrial motions on behalf of the government in criminal cases. And there are significant interests, which are pointed out in McVeigh, that are supported by that. One is the interest in avoiding delay, which is actually pretty relevant here because of the statute of limitations issue as well. And the other is avoiding the particular unfairness of prolonged litigation against the sovereign, which is also sort of what's going on here. So I don't think you can put a lot of weight on those first two factors. I'm not quite sure what would happen if the government actually pursued this as a rule of reason case. But that is their discretion. That is their discretionary call. And I'm going to sit down and hit it. Kagan. No, that's fine. This would be an extension of the rule of reason if the Court went with the government's view. And that is not appropriate in a criminal case. Thank you. Good morning, Your Honor. May it please the Court. I'm Jim Mitchell, and I'll be addressing the limitations issue this morning. Can you just answer one quick question for me? Sure. Did you both at the district court level and at the Court of Appeals acknowledge that there was further transactions that occurred on these allocated estates, including payments to each other, that occurred within the timeframe? Yes, Your Honor. So you would acknowledge that between Kemp and B&B that estates were being administered and payments were being made between them within the timeframe? The entire government's argument is the state administration takes place over time. Yeah. Generally, the assets only come out to the heirs. So the answer is, yes, there are payments made, but now you're going to argue that that doesn't matter because the agreements were made earlier and they were terminated more than that. That is correct. I just wanted to get that fact. That is absolutely correct, Your Honor. Okay. Thank you. So there's no dispute that the conduct charge in this case, which is the market allocation of customers and air location services, ended entirely in July of 2008. And it was ended by Kemp and its chief operating officer at the time. The government doesn't dispute this. They conceded, essentially, in their bill of particulars. But the government didn't bring an indictment until over eight years later in August of 2016. And they don't believe the clock for limitations should start ticking until the very last estate that is the subject of any guidelines allocation has been completely administered. But, Your Honors, if that were the position, that would result in things that are entirely at odds with why we have limitations for periods to begin with. At best, we'd have an unknowable and potentially limitless period to bring a charge, and also we'd have a beginning and end of a statute of limitations period that's entirely arbitrary. Let me explain why. Once an air location service signs an error, there's a series of routine mechanical tasks they have to undertake, like hiring a lawyer, submitting a claim probate form, monitoring the progress of the estate. All that happens, but nevertheless, the length of time it takes for the estate to be administered, it can vary dramatically. It varies based on the jurisdiction you're in. It varies based on the laws of that jurisdiction, the complexity of the assets in the estate, the size of the assets in the estate, and the number of heirs. All of those things can affect the length of administration. But more important for the court here, none of those factors have any relationship whatsoever to the thing charged in this indictment. That is the market allocation. They're just completely separate and divorced from any period or the time the market is allocated, or the customers are allocated. But the government here wants to fit this case inside U.S. v. Evans. But Evans and the other cases that the government relies on are distinguishable. They are primarily bin rigging cases. And they are all cases where the courts found that the specific central purpose of the conspiracy charged in those cases was to obtain the wrongful proceeds of the contracts that were being let out. If two people conspire to rob a bank, they rob the bank and one person gets all the money, and they agree they want to dribble that money out not too much at a time so it won't be suspicious. So the guy who holds all the money says every year I'm going to give you 10 percent of the proceeds so we won't spend them too much. Would that extend the statute of limitations to prosecute that case as long as the distribution among co-conspirators was being made? I think it would be a closer case than this one, Your Honor, because there you have actual wrongful proceeds that are being intentionally dribbled out over time as part of concealment. And if you charge that conspiracy as concealment, that the payment over time was part of a substantial term of the conspiracy, then I'd say so. That's not what we have here. That's a good argument. Thank you. Good response. The government cites, in fact, when the government argues here, they cite no market allocation cases like the one here. They only cite bin rigging cases. But Judge Sam, in looking at our case, did what we think this Court should do. They looked and they saw that distribution of the estate assets after the allocation of the customers of the guidelines were, and this is Judge Sam's words, quote, only routine administrative consequences relating to the probate of the estates. He also found that during the probate process, nothing more was done with respect to the estates that served the purpose of suppressing and eliminating competition, which are the main goals of the indictment as charged. In other words, the conduct the government wants to rely on here are merely the results of a candid conspiracy and not acts in furtherness of it. Well, there was affirmative acts in the sense that you are actually still splitting the commission, right? Well, Your Honor, there were acts that dealt with the probation case. I mean, do your clients realize that you're even splitting the commission? Do they know that this is a, that you're jointly? Well, what happened is under the guidelines. Do they know about your agreement and that they don't, that there's no competition? I think, I'm not sure, Your Honor, that's not in the record. I'm just saying you are splitting the commission, right? Isn't that kind of the whole point of it? What happens is that if there's a commission that comes out, and whatever the percentage is, and at the end of the distribution, when assets have been distributed, there's a breakdown of the guidelines. Some percentage to the entity that did the rest of the work. So it's not really, it's not routine like in the cases that you're citing. It's not some routine. It's not an interest rate. Well, Your Honor. It's, there's an actual splitting up of the proceeds. But it's no different in some situations. An air location service could actually contract with an overseas air location service because they don't have someone in that area, and they do split the proceeds at the end of the day. The government's not arguing that that is somehow a market allocation or an antitrust conspiracy. Also, I just want to say one thing about Evans. I know my time is up, but it's still connected. Evans did not address also the concerns that I think are particular here, and that is that the government's position here would create arbitrary and indefinite limitations to it. Why? Because it's a bid-rigging case. Bid-rigging cases are generally and typically a confined period of time where there's a bid process, and a more confined period of time where there's an execution under the contract and payment. That's not what we have here. The state administration is very different, and if you tie state administration to the limitations period here, it's like a moving target. And the last thing I'll say, Your Honor, just to sit down, is that a perfect example would be that in our cases there are often times, for example, where an estate is thought to be completely closed, but then later on they find more probate assets that have to be distributed to the airs. And if you took the government's position here, if that happened, once they had those new assets that had to be distributed, it could extend the statute of limitations for another five years, or in some situations where one thought the limitations period would have been completely over, it would revive anew for another five years. And that just can't be a consequence that's consistent with the purposes of limitations, which is repose and helping a defendant have the right to defend fairly against an old criminal case. Thank you, Your Honor. And the downside to going over is that you open it up to your opponent, and so two and a half minutes for the government rebuttal. Thank you, Your Honor. I'll just say briefly that there was a frontal attack on the per se rule, and I think the Court's fairly clear about the per se rule and efficiencies not coming in and what the point of that is and the benefits of the rule. So unless you have questions, I won't go into those. I do want to address the joint venture point, because I think the Court sees that this is not Pope Brothers. This is not a real joint venture. This is this sort of ad hoc thing that they want to label as a joint venture, but the Supreme Court cases like Topko say it's not enough just to stand up in court and say, oh, we're going to label this a joint venture, and there was some coordination that was going on. Is there any ruling below whether this was or wasn't a joint venture? I wouldn't describe it as a ruling that it was a joint venture. I don't think the Court found that it was a joint venture. But in the context of saying you have to try this under the rule of reason, the Court said there's efficiency-enhancing potential and cited this case, Pope Brothers v. Forest City Enterprises, the Seventh Circuit case, the leading case on joint ventures. But those cases, that case, Texaco v. Dogger, all of the leading joint venture cases all involve a real economic integration of productive capacity, and there's nothing like that here. With regard to mandamus, I think one point I'd return to is that there, to the extent there are multiple factors in one of the questions, I think, Judge Ebel, you asked about whether or not this is either novel on the one hand or somehow it's often repeated on the other. It sort of tells you that the factors are not, you don't have to meet all of them, because how could something be both novel and oft repeated? And if we had to say we fit one of those factors, this is novel in the sense that this is really unusual. If you look at the market allocation cases that we cite, it's really unusual for a court to say that a market allocation case or a customer allocation case like this isn't covered by the per se rule. I'm sure you don't need to prove them all, and I'm sure there's some that are more important than others, but what is also novel is it is extraordinarily novel for an appellate court to grant mandamus to a district court who is simply trying to make a rule on the law, as he sees it, just to correct error, legal error. I don't dispute that it's unusual and we're asking for extraordinary relief. This is like the United States v. Wexler case out of the Third Circuit that was a mandamus case where there were erroneous jury instructions. We believe it is like that, and we don't think this is going to open the floodgates for, you know, lots of future mandamus petitions. Like I mentioned, the Department of Justice takes this decision very seriously. The Solicitor General has to approve. This is, I think, given the texture of the antitrust law, a very unusual decision at warrants. Maybe if we granted mandamus, we should follow the Supreme Court in Bush v. Gore and say that our opinion is not going to be citable precedent in any future situation. I would hope that your decision is citable precedent because it's important to us, and this sort of brings me to my last point, which is there are important implications for criminal antitrust enforcement in the United States regarding the importance and clarity of the per se rule. And it would be, it would really in some ways paraphrase a decision called General Leaseways. You need to wrap it up because we want to be fair on time. Yeah, to paraphrase that, the per se rule would collapse if parties could just come into court and say that the efficiencies move their case from per se to rule of reason and undermine the government's prosecution. Thank you very much. Thank both sides for their argument. The case is submitted, and we will stand in recess for 10 minutes.